# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KYLE ANDREW WHITE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-193 (RMC) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In May 2011, while serving with the United States Army in Afghanistan, Specialist Kyle Andrew White sustained a serious gunshot wound to his left thigh during a firefight with enemy combatants. After a period of recovery, Mr. White filed a claim for benefits under the Servicemembers' Group Life Insurance Traumatic Injury Protection (TSGLI) program, which was established to provide monetary assistance to service members who have suffered traumatic injuries. Mr. White submitted an insurance claim stating that he was unable "to independently perform" two "activities of daily living"—bathing and dressing—for a qualifying period of at least 30 consecutive days. However, the Army determined that Mr. White was able to independently bathe and dress himself within 30 days of his injury and so denied his claim. Mr. White contests that determination here.

Mr. White appealed to the Army several times without success and now challenges the Army's denial of benefits under the Administrative Procedure Act (APA). Both parties move for summary judgment. The Court will deny Mr. White's motion for summary judgment and grant the Army's cross-motion.

1

## I. BACKGROUND

### A. Statutory Background

The Servicemembers' Group Life Insurance Traumatic Injury Protection program was established in 2005 to provide monetary assistance to service members who have suffered traumatic injuries. *See* 38 U.S.C. § 1980A. To receive benefits, a service member must show that his or her injury resulted in a "qualifying loss," which includes an "inability to independently perform" two or more "activities of daily living" (ADLs) for a minimum period of 30 consecutive days.[1] *See* 38 C.F.R. § 9.20(f)(20). "Activities of daily living" are defined as bathing, continence, dressing, eating, toileting, and transferring in and out of a bed or chair with or without equipment. *See* 38 C.F.R. § 9.20(e)(6)(vi); 38 U.S.C. § 1980A(b)(2)(D). Service members are entitled to additional benefits after 60, 90, and 120 consecutive days with a qualifying loss. *See* 38 C.F.R. § 9.20(f)(20).

Neither the TSGLI statute nor corresponding regulations define what it means to be able to "independently perform" an activity of daily living. Without such definition, the Department of Veterans Affairs (VA) issued guidance to the service branches in the *Traumatic Injury Protection Under Servicemembers' Group Life Insurance (TSGLI): A Procedural Guide* (hereinafter *Procedures Guide*) [Dkt. 31-2],[2] which states that

> [a] member is considered to have a loss of ADL if the member REQUIRES assistance to perform at least two of the six activities of daily living. If the patient is able to perform the activity by using

---

[1] Traumatic brain injuries may be qualifying losses and are subject to a different compensation schedule than "other injuries," including those at hand. Mr. White alleges no traumatic brain injuries, so the Court will discuss only the TSGLI as it applies to the facts here.

[2] Version 2.38 of the *Procedures Guide*, dated October 31, 2016, was the version in effect during the Army's most recent review of Mr. White's claim. Further, there were no changes to the *Procedures Guide* relevant to this case since at least 2010. *See Procedures Guide* at 1-2 (describing the document's revision history).

2

> accommodating equipment (such as a cane, walker, commode, etc.)
> or adaptive behavior, the patient is considered able to independently
> perform the activity.

*Procedures Guide* at 18 (emphasis in original). Versions of this guidance have been used since 2006, though there is no indication that the guidance was formally noticed and commented on. *See Procedures Guide* at 1-2 (describing the document's revision history).

Although the TSGLI program is administered by the VA, the service branches, which are components of the Department of Defense, are separately responsible for determining whether their members are covered by the TSGLI and whether service personnel sustained a qualifying loss. *See* 38 U.S.C. § 1980A(f). Army service members who are denied benefits may appeal first to the Army TSGLI Office, then to the Army Human Resources Command (HRC) TSGLI Appeals Board, and finally to the Army Board for Correction of Military Records (ABCMR or Board). *Procedures Guide* at 73.

### B. Medical and Service Background

On May 31, 2011, while serving with the United States Army in Afghanistan, Specialist Kyle Andrew White sustained a serious gunshot wound, entry and exit, to his left thigh during a firefight with enemy combatants. TSGLI Application at AR 98-101. He was evacuated by medical helicopter and underwent surgery to explore and treat the wound. *Id.* Fortunately, although he suffered significant soft tissue injury, no major bones were fractured or major arteries or veins damaged. *Id.* On June 4, 2011, he was medically evacuated to Baynes-Jones Army Community Hospital at Fort Polk, Louisiana, and admitted to the Warrior Transition Unit. *Id.* at AR 89-92. Mr. White's recovery took place over several months in 2011. The Court highlights only a few of the key medical records in the Administrative Record.

Mr. White's case management notes from June 4, 2011 (5 days after injury), show that he could walk on his own (albeit with difficulty and the assistance of a cane) and that he was

3

living at the barracks with a private room and bathroom. *Id.* On June 6, 2011 (7 days after injury), Mr. White reported difficulties with dressing, eating, hygiene, and walking, as well as moderate pain and restricted range of motion. *Id.* Notwithstanding, he was "[w]ell appearing considering that he was shot in the leg one week ago" and released with work/duty limitations. *Id.* at AR 82. On June 10, 2011, Mr. White's parents arrived at Fort Polk to help him with his recovery. Ex. A (Mother's Caregiver Letter), TSGLI Appeal, at AR 147.

On June 14, 2011 (15 days after injury), Mr. White appeared at the Warrior Transition Unit for a weekly checkup. At that time, Mr. White completed an intake form, reporting that he had no difficulties driving, planning and shopping for meals, cooking, or eating well. He further indicated that he had only minimal difficulty ("pain occurs 25% of the time") with dressing himself, with personal hygiene (including bathing), and with everyday activities. *See* TSGLI Application at AR 62-63. However, Mr. White did report moderate difficulty ("pain occurs 50% of the time") performing light household chores, sleeping at night, and with gross motor active range of motion ("movement of shoulder, knee, hips"). *Id.* Lastly, Mr. White reported profound difficulty performing heavy outdoor chores. *Id.*

In addition to the intake form, Mr. White reported that "he has a seat in the shower, a detachable spray nozzle, and a long-handled sponge. He states he needs these and they work well for him, as he has difficulty with balance and accessing the [left] distal [lower extremity]." *Id.* at AR 63-64. He also reported that he had "[d]ifficulty dressing: putting on [left] sock, but he can do it." *Id.* Mr. White was again observed ambulating with a cane. The primary care manager recommended that Mr. White be returned to the rear detachment troop unit, because care was no longer complex, and released him without limitations. *Id.* at AR 63-64, 67.

4

On June 18, 2011 (19 days after injury), Mr. White reported at a checkup that his family had returned to California earlier that week. *Id.* at AR 46. On June 23, 2011 (23 days after injury), Mr. White flew back to California for 30 days of convalescent leave. *Id.* at AR 41, 39. Notes from a checkup in California on June 24, 2011 (25 days after injury), show that Mr. White had two wounds from his surgery that were "slow to heal," but that he was "[o]therwise doing well." *Id.* at AR 37.

Medical records indicate that by July 7, 2011 (38 days after injury), Mr. White's wounds were almost fully closed and could no longer be packed. *Id.* at AR 34. By July 21, 2011 (52 days after injury), Mr. White was walking without a cane (but with a limp) and could extend his leg, though not fully. *Id.* at AR 29-30. His left knee was weaker than his right, and he reported throbbing that got worse over the course of the day but better with rest. *Id.* By July 25, 2011 (56 days after injury), Mr. White's wound and skin were fully healed, although he still experienced decreased strength and range of motion with his left leg and fatigue after short periods of standing. *Id.* at AR 27. By August 9, 2011 (71 days after injury), Mr. White had full range of motion and near normal strength in his left leg, although he still experienced some pain ("3/10"). *Id.* at AR 23.

On November 27, 2012, after 2 years, 10 months, and 16 days of active service, Mr. White was honorably discharged from the Army due to physical disability. *See* Certification of Release or Discharge from Active Duty at AR 1162.

C.  **Procedural History**

On September 6, 2011, Mr. White submitted a TSGLI claim to the Army based on an inability to independently perform two activities of daily living, to wit, bathing and dressing, for at least 45 days (*i.e.*, between the 30 and 60-day thresholds). *See* TSGLI Application at AR 1-10. Mr. White's claim was certified by Doctor Robert Kendrick, Mr. White's treating

5

physician at Fort Polk. *Id.* The Army denied his claim on October 18, 2011, because his "loss did not meet the standards for TSGLI." Letter from Prudential Financial, Inc., to Kyle A. White (Oct. 18, 2011) at AR 112-14.[3]

Mr. White submitted a request for reconsideration to the Army on April 2, 2012. *See* TSGLI Application for Reconsideration at AR 115-27. In his request for reconsideration, Mr. White increased the duration of his injury and stated that he was unable to independently bathe and dress himself for 71 days (May 31, 2011, through August 9, 2011). *Id.* This claim was certified by Doctor Robert Hopkins, a non-providing physician, based on his review of Mr. White's file. *Id.* Mr. White also submitted caregiver letters from his mother and father, who had assisted with his care at Fort Polk and during convalescent leave in California, and from his brother, who had assisted with his care only during convalescent leave in California. Regarding Mr. White's time at Fort Polk, Mr. White's father stated in part that

> [w]e had to help him get dressed and undressed, help him from the bed to the wheelchair and from the wheel chair to the restroom. I helped him with his showering as he needed to keep the wound dry and he was not stable and was very weak. I also helped with all personal hygiene, and getting on and off the toilet as well as drying and dressing him.

Ex. C (Father's Caregiver Letter), TSGLI Application for Reconsideration, at AR 150.

Regarding Mr. White's convalescent leave, Mr. White's mother stated in part that

> [w]hile he was with us his father did all the showering and personal trips to the restroom as well as His [sic] personal hygiene and changing Kyle's clothes and I was the one who would change Kyle's wound dressings and small clothing's [sic] such as shoes and socks as it was hard for Kyle to bend due to His [sic] leg stiff and was swollen [sic].

---

[3] TSGLI is a VA program for which Prudential acts as administrative intermediary. Once the Army determines ("certifies") that a service member qualifies for TSGLI benefits, Prudential administers his claim and any benefit checks to which he is entitled.

6

Mother's Caregiver Letter at AR 147.  However, upon reconsideration, the Army again informed Mr. White in February 2013 that the medical records "did not indicate that you were incapable of performing at least 2 of your Activities of Daily living for 30 consecutive days."  Letter from Cary G. Potts, Chief, Special Compensations Branch, Army Human Resources Command, to Kyle A. White (Feb. 13, 2013) at AR 252-53.

Mr. White appealed this decision in June 2013 to the Army Human Resources Command TSGLI Appeals Board.  *See* HRC Appeal at AR 254-57.  His appeal was denied in August 2013 for the same reasons.  *See* Letter from Cary G. Potts, Chief, Special Compensations Branch, Army Human Resources Command, to Kyle A. White (Aug. 8, 2013) at AR 292-93.  Finally, Mr. White appealed the rejection of his application for benefits to the Army Board for Correction of Military Records in January 2014.  *See* ABCMR Appeal at AR 295-305.  ABCMR summarily denied his claim in December 2014.  *See* Letter from Gerard W. Schwartz, Acting Director, ABCMR, to Kyle A. White (Dec. 31, 2014) at AR 620.

Mr. White filed his Complaint in this Court on January 31, 2017.  He alleges that ABCMR's decision was arbitrary and capricious because it did not provide any explanation for his denial of benefits.  *See* Complaint [Dkt. 1].  In response, the Army moved to remand voluntarily to ABCMR for reconsideration.  *See* Mot. for Voluntary Remand [Dkt. 6].  The Court granted that motion over Mr. White's objections.  *See* Order Granting Mot. for Voluntary Remand [Dkt. 9].

On November 30, 2017, ABCMR—having both reviewed the administrative record itself and referred the claim to an Army Review Board Agency (ARBA) Senior Medical Advisor for an advisory opinion—again denied Mr. White's application, finding that Mr. White's use of adaptive equipment showed that he did not medically require assistance, even if

7

such assistance were helpful. *See* ABCMR Remand at AR 1141-61; *see also* ARBA Advisory Opinion at AR 641-658. Mr. White filed an Amended Complaint on February 15, 2018, Am. Compl. [Dkt. 15], and now moves for summary judgment. The motion and cross-motion for summary judgment are ripe for review.[4]

## II. LEGAL STANDARD

Summary judgment is available when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Because the Court's review of the facts in an agency action is limited to the administrative record, *see Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d 156, 160 (D.C. Cir. 2003), summary judgment is the proper stage for determining whether, as a matter of law, an agency action is supported by the administrative record and is consistent with the Administrative Procedure Act, *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)). "[D]ecisions of boards for correction of military records are subject to review under the APA." *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006). The party challenging an agency's action bears the burden of proof. *City of Olmsted Falls v. FAA*, 292 F.3d 261, 271 (D.C. Cir. 2002).

---

[4] Pl.'s Mem. of P & A/Mot. for Summ. J. (Pl.'s Mem.) [Dkt. 19]; Mem. of Law in Supp. of Def.'s Cross-Mot. for Summ. J. and Resp. in Opp'n to Pl.'s Mot. for Summ. J. (Def.'s Mem.) [Dkt. 20]; Cross-Mot. for Summ. J. [Dkt. 21]; Pl.'s Reply in Supp. of Mot. for Summ. J. and Resp. to Def.'s Cross-Mot. for Summ. J. [Dkt. 25]; Def.'s Reply in Supp. of Mot. for Summ. J. Resp. to Pl.'s Cross-Mot. for Summ. J. [Dkt. 27].

8

## III. ANALYSIS

### A. Servicemembers' Group Life Insurance Traumatic Injury Protection (TSGLI) Program

As a preliminary matter, Mr. White argues that ABCMR improperly relied on the *Procedures Guide* and applied the wrong standard of proof during its review of his claim. The Court will address each point before considering the merits of Mr. White's challenge to ABCMR's decision.

#### 1. TSGLI Procedures Guide

Mr. White argues that the VA *Procedures Guide* does not have "force of law" and that ABCMR's reliance on that guidance to determine his TGLSI eligibility, specifically with regard to the use of adaptive equipment, is misplaced. Pl.'s Mem. at 21-22. The Army responds that the *Procedures Guide*'s interpretation of "inability to independently perform" is both reasonable and persuasive authority on the matter. Def.'s Mem. at 21.

As a starting point, neither party argues that the interpretations of the statute and regulations in the *Procedures Guide*—interpretations which the VA never formally published for notice and comment—are subject to *Chevron* deference.[5] *Cf. Harris County*, 529 U.S. at 587 (finding that "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . do not warrant *Chevron*-style deference"). Rather, both parties appear to agree that those interpretations may be "'entitled to respect' under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'"

---

[5] *Chevron* held that a court must give effect to an agency's formal regulation containing a reasonable interpretation of an ambiguous statute. *See Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000) (citing *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-44 (1984)). Mr. White argues that the *Procedures Guide* is not entitled to deference under *Chevron* and the Army concedes the point. Def.'s Mem. at 20-21.

*Harris County*, 529 U.S. at 587 (internal citations omitted) (quoting *Skidmore*, 323 U.S. at 140). Persuasive elements include an agency's "body of experience and informed judgment," "the thoroughness evident in its consideration, the validity of its reasoning," and "its consistency with earlier and later pronouncements," among other factors. *Skidmore*, 323 U.S. at 140.

Mr. White argues that even *Skidmore* deference is unwarranted here because "the Government has essentially fashioned a new presumption of ADL independence" that "does not comport with Congress's intent for the [TGSLI] program." Pl.'s Mem. at 26. For example, Mr. White contends that the Army has elsewhere acknowledged that the *Procedures Guide* is not "legally binding," *see Koffarnus v. United States*, 175 F. Supp. 3d 769, 776 n.6 (W.D. Ky. 2016) ("The Program publishes a procedural guide, which the parties agree is not legally binding."), so that it was "absurd and untruthful" for ABCMR to state that it was "unaware of any legal impediment preventing this Board from referring to the guidelines in the TSGLI Procedures Guide." Pl.'s Mem. at 22 (internal citations omitted). But ABCMR's position is logically correct: even if ABCMR is not *required* by law to follow the VA's implementing guidance, it does not automatically *violate* the law when it follows that guidance.

Mr. White argues further that Congress has already spoken to this question and clearly provided the criteria for TGSLI benefits to him, which the *Procedures Guide* undermines. *See* Pl.'s Mem. at 23-24 (citing 38 U.S.C. § 1980A and 38 C.F.R. § 9.20). However, neither the text of the statute nor of the corresponding regulation supports the argument.

At 38 U.S.C. § 1980A, Congress authorized the Secretary of Veteran Affairs to define the scope of TSGLI, *i.e.*, it provided that service members are "insured against such losses due to traumatic injury (in this section referred to as 'qualifying losses') as are *prescribed by the Secretary* [*of Veteran Affairs*] *by regulation*." 38 U.S.C. § 1980A(b)(1) (emphasis added).

Those regulations are found at 38 C.F.R. § 9.20. While Congress itself also described certain qualifying losses, *see generally* 38 U.S.C. § 1980A(b)(1)(A)-(H), § 1980A grants considerable discretion to the Secretary to determine the coverage of the TSGLI program through regulation. In some ways, the Secretary broadened the ways in which service members could qualify for the TSGLI program, including the basis for Mr. White's own claim. *Compare id.* § 1980A(b)(1)(H) ("Qualifying losses so prescribed shall include . . . the inability to carry out the activities of daily living resulting from traumatic injury to the brain."), *with* 38 C.F.R. § 9.20(f)(20) ("Traumatic injury, other than traumatic brain injury, resulting in inability to perform at least 2 Activities of Daily Living"). In other ways, the Secretary did not stray far from the statutory language. *Compare id.* § 1980A(b)(2)(D) ("The term 'inability to carry out activities of daily living' means the inability to independently perform two or more of the following six functions."), *with* 38 C.F.R. § 9.20(e)(6)(vi) (same).

Most importantly, neither the statute nor the regulation, which mirror each other, defines "independently." That qualifier is only given effect in the *Procedures Guide*, which denies TSGLI benefits to service members who are sufficiently "independent" to perform six activities of daily living by themselves—even if only with the assistance of everyday equipment or behavioral changes. *See Procedures Guide* at 18 ("If the patient is able to perform the activity by using accommodating equipment . . . or adaptive behavior, the patient is considered able to independently perform the activity."). This limitation on TSGLI benefits has already been approved by one district court. *See Weller v. United States*, No. 14-68-SCR, 2014 WL 5320133 at *3 (M.D. La. Oct. 17, 2014) (finding the interpretation of "independently" in the *Procedures Guide* not arbitrary, unreasonable, or inconsistent with the statute). Given the VA's years of experience with veterans' needs, although not always performed to the max, the limitation is also

11

consistent with *United States v. Mead Corp.*, 533 U.S. 218 (2001) ("[A]n agency's interpretation may merit some deference . . . given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires."). Indeed, this interpretation of "independently" has been applied consistently since at least 2010, *see Procedures Guide* at 1-2 (describing the document's revision history), if not earlier.

Mr. White fears that such a definition of "independently" could lead to the denial of benefits under the TSGLI program to all injured service members. Notwithstanding the many other problems identified with the VA's services by news reports, the Court has no reason to believe that the VA intends a TSGLI program without constituents. By contrast, Mr. White's expansive claim would rob the term "independently" of substantive meaning and allow claimants to show merely that they received assistance, not that assistance was medically required.

In short, the VA could have defined "independently" in other fashions but the definition in the *Procedures Guide* provides a practical and clear interpretation of otherwise ambiguous language and is not arbitrary, unreasonable, or inconsistent with the statute. It is persuasive authority on the proper implementation of the TSGLI program, entitled to respect, and it was permissible for ABCMR to rely on its reasoning in crafting its decision on Mr. White's appeal.

2. *Benefit of the Doubt Standard*

Mr. White also argues that ABCMR improperly applied a preponderance-of-the-evidence standard when reviewing his claim because the Secretary of Veterans Affairs is required to "give the benefit of the doubt to the claimant" when the evidence is in equipoise. 38 U.S.C. § 5107(b). The Army responds with three arguments: (i) the benefit-of-the-doubt standard does not apply to proceedings before ABCMR, which is part of the Department of

Defense, not the VA; (ii) the evidence was not in equipoise; and (iii) Mr. White never made this argument before ABCMR and so has waived it here. The Court addresses only the third argument.

"It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004); *see also Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("[T]here is a near absolute bar against raising new issues—factual or legal—on appeal in the administrative context.").

Mr. White's claim was reviewed twice by ABCMR; once through the regular course of appeal, and again on voluntary remand from this Court. In both instances, the administrative record shows that Mr. White argued that the appropriate standard of proof was the preponderance of the evidence. *See* Pl.'s Notice of Disagreement at AR 299 (stating that the standard of proof required "is a preponderance of the evidence"); *see also* ABCMR Appeal at AR 623; ABCMR Remand at AR 1156. Mr. White now shifts position to argue that his claims were entitled to the benefit of the doubt, transforming the burden of proof "from 'preponderance of the evidence' to a lesser 'substantial evidence' standard." Pl.'s Mem. at 18 (quoting *Yearwood v. United States*, 124 F. Supp. 3d 1204, 1216 (N.D. Ala. 2015)). This new argument was never made before ABCMR, has been waived, and will not be considered by the Court. Instead, the Court will assume that ABCMR properly relied upon the preponderance of the evidence standard during its review.

B. Review by the Army Board for Correction of Military Records

The driving issue here is whether the administrative record supports ABCMR's finding that Mr. White was able to independently bathe or[6] dress himself within 30 days of his traumatic injury. Mr. White argues that ABCMR's finding was arbitrary and capricious and violated the APA because ABCMR did not give sufficient weight to evidence from Mr. White's treating doctor, his forensic doctor, or his "percipient" caregivers, to wit, his parents and brother. Mr. White also argues that ABCMR placed too much emphasis on the advisory opinion provided by reviewing Army medical personnel, and that ABCMR improperly relied upon the *Procedures Guide*. The Army responds that each piece of evidence was granted its due weight and that the standard of review is deferential to ABCMR's decision.

The APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Arbitrary and capricious review is "narrow." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Further, decisions by military boards are entitled to "an unusually deferential application of the 'arbitrary or capricious' standard." *See Piersall*, 435 F.3d at 324; *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). A court is not to "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, a court must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found

---

[6] If Mr. White were able to do either, he would be unable to perform only one activity of daily living and so would not qualify for TSGLI benefits.

and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

When considering Mr. White's appeal, ABCMR began with a chronological recounting of Mr. White's medical records. During that review, it repeatedly emphasized that on June 14, 2011 (15 days after injury), Mr. White self-reported that he was able to drive, shop for food, and cook with no difficulty; dress himself, bathe, and perform other every-day activities with only minimal difficulty; and to perform light household chores with moderate difficulty. *See* ABCMR Remand at 1146-47. ABCMR particularly noted that Mr. White had reported that he had a seat in the shower, a detachable spray nozzle, and a long-handled sponge, which "work well for him," and that while he had difficulty putting on his left sock, "he can do it." *Id.* at AR 1147. Additionally, ABCMR highlighted medical records that indicated Mr. White could ambulate independently, had managed to care for himself for 5 days after his parents left Fort Polk, had independently travelled cross-country for convalescent leave, and that his healing process was "overall doing well" within 25 days of his injury. *See* ABCMR Remand at AR 1148. Based on the records of his care, ABCMR determined that with the use of adaptive equipment and consistent with the *Procedures Guide*, Mr. White was able to independently bathe and dress himself within 30 days of his injury, and that assistance from others was helpful but not medically required. *Id.* at AR 1153-54.

ABCMR also considered the professional opinion of Dr. Hopkins, who, upon his own review of the records, certified that Mr. White was unable to independently bathe and dress himself for a at least 71 days after his injury.[7] However, ABCMR did not find Dr. Hopkins'

---

[7] Dr. Robert Kendrick also certified that Mr. White was unable to independently bathe and dress himself for 45 days after he was wounded. Mr. White argues that ABCMR improperly ignored

conclusions persuasive because he did not mention, much less account for, contradicting evidence in the medical records. *Id.* at AR 1156. Specifically, in addition to the evidence that Mr. White could bathe and dress himself before day 30, ABCMR determined that his wound had healed by July 21, 2011 (52 days after the injury); that from July 22-25, 2011 (53-56 days after his injury), Mr. White had traveled independently back to Fort Polk from California; and that on July 25, 2011 (56 days after his injury), Mr. White was living independently on base. *Id.* at AR 1156-57. No discussion of these facts was included in Dr. Hopkins' certification.

Similarly, ABCMR considered letters from Mr. White's mother, father, and brother, all of whom described the day-to-day help they provided to Mr. White during his recovery. However, because these letters also included inaccuracies, conflicted with contemporaneous medical records, and did not account for the times when Mr. White's parents and brother were not present to assist Mr. White, ABCMR found the family statements to be unpersuasive. *Id.* at AR 1158-59. For example, Mr. White's father stated that during his time at Fort Polk Mr. White was "confined to a bed and or a wheel chair for approximately one month" and "needed full time attention as he could not shower by himself, clothe himself, change his medical dressings and needed help in the restroom with all personal needs." Father's Caregiver Letter at AR 150. Similarly, Mr. White's brother stated that on June 23, 2011, Mr. White was "delivered to the gate in a wheel chair and was unable to walk on his own to our vehicle." Ex. B (Brother's Caregiver Letter), TSGLI Appeal, at AR 149. However, Mr. White had been observed on several occasions walking on his own with the aid of a cane and had self-reported

---

this certification. *See* Pl.'s Mem. at 11 n.9. However, Dr. Kendrick's certification was not submitted to ABCMR for review—whether in error or because it conflicted with Dr. Hopkins' determination that Mr. White could not independently bathe or dress himself for 71 days—and so is waived here. *See Nuclear Energy Inst.*, 373 F.3d at 1297.

16

that he could bathe himself with the use of adaptive equipment.[8] ABCMR acknowledged that the family's support contributed to Mr. White's recovery but concluded that their assistance was not medically required. *Id.* at AR 1159-60.

Finally, in response to this Court's remand, ABCMR submitted Mr. White's file for additional review by Col. Roman Bilynsky, a medical doctor and Senior Medical Advisor to the Army Review Board Agency (ARBA). *See* ARBA Review at AR 635. Col. Bilynsky's advisory opinion—based on his own review of the medical records and the submissions by Dr. Hopkins and Mr. White's family—was that Mr. White was capable of both independently dressing and bathing himself within 30 days of his injury. Col. Bilynsky noted that "[t]wo weeks after the injury the applicant self-reported his ability to dress and bath [sic] himself successfully with minimal difficulty." *Id.* at AR 645. He also noted that there was "no mention in the available inpatient notes that [Mr. White] required more than minimal wound care, i.e. no problems with dressing . . . [or] bathing" and that the need for such assistance "would have been noted" in the records for staffing purposes. *Id.* at AR 646. Finally, Col. Bilynsky noted that for five days before he flew to California for convalescence leave, Mr. White "was living alone in the WTU barracks with no family member(s) or others to dress him, bathe him, or wipe him (with toileting). He was doing all these ADLs independently." *Id.* ABCMR found Col. Bilynsky's "comprehensive" study "well founded" and more persuasive "[r]elative to [Dr.

---

[8] Mr. White's mother also describes other chores with which she helped Mr. White. Mother's Caregiver Letter at AR 147. The Army responds that the military could have provided much of the same help. *See* ABCMR Remand at AR 1159. Although the Army's argument is not entirely responsive, those chores, such as shopping for food and cooking, are not activities of daily living that Mr. White claims he was unable to perform.

17

Hopkins'] perfunctory assertion that the applicant incurred extensive ADL loss." [9] ABCMR Remand at AR 1154.

Mr. White takes umbrage because ABCMR under-valued his family members' letters; he contends that these direct reports on his condition are entitled to greater weight than ABCMR's (and Col. Bilynsky's) review on the papers. Mr. White cites *Fail v. United States*, No. 12-cv-1761, 2013 WL 5418169 (D. Colo. Sept. 27, 2013), for the proposition that the family letters, which "offer unrebutted 'statement [sic] from a percipient witness about the specific limitations that Plaintiff actually experienced,'" are controlling evidence. Pl.'s Mem. at 31 (quoting *Fail*, 2013 WL 5418169 at *10).

The *Fail* court considered the appeals of eight Army service members to ABCMR. Six of those appeals were denied, but two, one by Christian Andersonn and another by Timothy Melson, were granted. *Fail*, 2013 WL 5418169 at *15. In Mr. Andersonn's case, his wife submitted a letter to ABCMR describing broadly the assistance she provided to Mr. Andersonn during his recovery. Instead of considering her letter, however, ABCMR "either failed to consider this evidence or simply discounted it without explanation, either of which would clearly be arbitrary and capricious action." *Id.* at *10. Likewise, Mr. Melson's wife submitted a letter indicating that he too had required assistance during his recovery. *Id.* at *13. ABCMR denied Mr. Melson's claim based on the medical record, but the court found that the medical record was "quite limited," "so cursory as to be unenlightening," and did not speak one way or the other as to Mr. Melson's need for assistance. *Id.* By default, then, "Mr. Melson's

---

[9] Although Mr. White argues that Col. Bilynsky offers only "generalized conclusions," the advisory opinion shows that Col. Bilynsky carefully considered and took notes on the medical records, doctor's certification, and caregiver statements when developing his recommendation. *See generally* ARBA Review at AR 641-58.

wife's statement [stood] unrebutted and serve[d] as conclusive proof that Mr. Melson did indeed require the assistance described." *Id.*

Mr. White's comparisons to *Fail* are unavailing. ABCMR did not ignore the letters submitted by Mr. White's family, but specifically considered and compared them to the contemporaneous medical records and explained why it chose to give more weight to the medical records than to the family's statements. Further, the medical records in this case were not silent on the matter of activities of daily living. Instead, they provide conflicting information from Mr. White and his family and indicate, through his own statements, that Mr. White was able to bathe and dress himself independently within 30 days of his injury. Whether the Court would have found the letters compelling, would have given them greater weight, or would have reached a different conclusion is not the standard. ABCMR addressed all the evidence before it and clearly and logically provided its reasoning for finding some pieces of evidence more persuasive than others. Given its thorough review, it cannot be said that ABCMR's reasoning was arbitrary or capricious.

## IV. CONCLUSION

Mr. White's Motion for Summary Judgment, Dkt. 19, will be denied, and the United States' Cross-Motion for Summary Judgment, Dkt. 21, will be granted. A memorializing Order accompanies this Memorandum Opinion.


Date: October 22, 2018

                                                    ROSEMARY M. COLLYER
                                                    United States District Judge